Michelle C. Yau (forthcoming *pro hac vice*)
Daniel R. Sutter (forthcoming *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600
myau@cohenmilstein.com
dsutter@cohenmilstein.com

Shaun P. Martin (Cal. Bar No. 158480)
5998 Alcala Park, Warren Hall 109C
San Diego, CA 92110
Telephone: (619) 260-2347
Facsimile: (619) 260-7933
smartin@sandiego.edu

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| Gregg Berkeley, on behalf of himself and all others similarly situated, | Case No: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| Intel Corporation and the Administrative Committee of the Intel Minimum Pension Plan, | |
| Defendants. | |

Plaintiff Gregg Berkeley, by and through his attorneys, on behalf of himself and all others similarly situated, allege the following:

## I. NATURE OF THE ACTION

1.      This is a civil enforcement action brought under sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and

(a)(3), concerning Defendants' violations of ERISA's anti-forfeiture and joint and survivor annuity requirements with respect to the Intel Minimum Pension Plan (the "Intel Plan" or the "Plan").

2. Plaintiff and the Class are vested participants in the Intel Plan, which denies them their full ERISA-protected pension benefits. Specifically, Plaintiff and Class members receive pension benefits in the form of a joint and survivor annuity—a benefit that pays an annuity both to the participant for their life and for the life of the participant's surviving spouse. In determining the amount of Plaintiff's and Class members' joint and survivor annuities, however, Defendants employed actuarial assumptions *40 years* out of date. That means Plaintiff and Class members receive less than the "actuarial equivalent" of their vested accrued benefit, contrary to ERISA.

3. Generally, a pension benefit is expressed as a single life annuity, meaning it pays a monthly benefit amount to the participants for their entire lives (i.e., from the time of retirement until death). A single life annuity is the default form of benefit for unmarried retirees.

4. For married participants, however, the default form of pension payment is a joint and survivor annuity or "JSA." Joint and survivor annuities provide the participants with a payment stream for their own lives, and then, if the participant has a surviving spouse, for the life of the spouse. ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d). The survivor annuity is expressed as a percentage of the benefit paid during the participant's life; typically, the surviving spouse will receive 50%, 75%, or 100% of the benefit the participant received.

5. To calculate a married participant's (and their spouse's) joint and survivor annuity, the Plan starts with the participant's single life annuity, then uses actuarial assumptions to convert it to a joint and survivor annuity. When the Plan makes that conversion, ERISA requires the joint and survivor annuity to be the "actuarial equivalent" of the single life annuity. 29 U.S.C. § 1055(d).

6. Actuarial equivalence is a computation designed to ensure that, all else being equal, all forms of benefit payments have the same economic value. Generally, an actuarial equivalence computation considers both an interest rate and the expected longevity of a participant and their spouse. The interest rate accounts for the value of future pension payments, reflecting the time value of money, while the mortality table provides the expected likelihood of that future payment being paid to the participant or their survivor based on published tables showing the statistical life

expectancy of a person at a given age.

7.     When plans make these actuarial conversions, several provisions of ERISA and the relevant regulations ensure that the participants receive a JSA (joint and survivor annuity) with the same economic value as the single life annuity.

8.     First, ERISA requires that joint and survivor annuities be "the actuarial equivalent of a single annuity for the life of the participant." ERISA §§ 205(d)(1)(B), (d)(2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B), (d)(2)(A)(ii).

9.     Second, ERISA § 203(a), 29 U.S.C. § 1053(a)  provides that an employee's right to their vested retirement benefits is non-forfeitable and states that paying a participant less than the actuarial equivalent value of their accrued benefit results in an illegal forfeiture of vested benefits.

10.    Echoing the statute's actuarial equivalence requirements, applicable Treasury regulations make clear that actuarial "[e]quivalence may be determined[] on the basis of consistently applied reasonable actuarial factors[.]" 26 CFR § 1.401(a)-11(b)(2).[1]

11.    The Intel Plan violates both these rules with respect to the default form of pension provided to married participants. For these individuals, when the Plan converts a single life annuity to a joint and survivor annuity, it uses a mortality table that is 40 years out of date, despite massive increases in life expectancy in the intervening decades.

12.    As a result, these participants and beneficiaries receive significantly less than the actuarial equivalent of their single life annuity, in violation of ERISA's requirements set forth in § 203(a) and § 205(d).

13.    When retiring or deciding whether to retire, Plan participants like Plaintiff consider information provided by Defendants about their retirement options under the Plan. Here, Defendants did not disclose how participants' JSAs were being calculated and, instead, represented that the married participants default forms of payment satisfied applicable legal requirements. This led Class members (married retirees) to believe they were receiving benefits that are as valuable as single

---

[1] The Tax Code contains numerous provisions which correspond to ERISA; here, the provision which corresponds to ERISA § 205 (29 U.S.C. § 1055) is 26 U.S.C. § 401(a)(11).

retirees, when in fact those benefits are less valuable than what ERISA provides. This failure to pay married retirees pensions that have the same economic value as single retirees violates ERISA's statutory requirements.

14.     The members of the Class are participants of the Intel Plan (and their respective beneficiaries) who had their pension benefits calculated pursuant to the Plan's actuarial assumption, and who are receiving a joint and survivor annuity which is less than the value of the single life annuity converted to a joint and survivor annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e). Class members are harmed by Defendants' calculation and payment of benefits that are less than the actuarial equivalent of their protected retirement benefits, in violation of ERISA.

15.     The Class members are additionally harmed by Defendants' disclosures because Class members did not receive accurate information—which is mandated by law—and thus made retirement decisions based on misimpressions about the value of benefits available to them.

16.     Plaintiff bring this action on behalf of the Class pursuant to ERISA § 502(a)(2) and (a)(3), 29 U.S.C. 1132(a)(2) and (a)(3) for all appropriate equitable relief, including but not limited to: a declaration that the Plan's actuarial assumptions violate ERISA's actuarial equivalence and non-forfeitability requirements as to the Class; an injunction requiring Plan fiduciaries to ensure that the Plan pays actuarially equivalent benefits to all Class members; reformation of the Plan to provide for reasonable actuarial assumptions as to Class members; and recalculation of benefits for all Class members and payment to them of the past amounts they should have received had the plan been administered in compliance with ERISA.

## II.  JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

18.     This Court has personal jurisdiction over Intel Corporation because it transacts

4

business in, employs people, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

19.     This Court has personal jurisdiction over the Administrative Committee of the Intel Minimum Pension Plan because it has significant contacts with this District through the large number of Plan participants that live in this District, and because ERISA provides for nationwide service of process.

20.     Venue is proper in the San Jose Division of this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because Defendant Intel Corporation ("Intel") resides, employed Class members in, and otherwise does business in this District.  Intel's corporate headquarters is found in Santa Clara County and hence resides in the San Jose Division of this District.

21.     Venue is also proper in the San Jose Division of this District pursuant to 28 U.S.C. § 1391 because Defendant Intel Corporation does business in Santa Clara County within this District.

## III.  PARTIES

**Plaintiff**

22.     Plaintiff <u>Gregg Berkeley</u> resides in Portland, Oregon and is a participant in the Intel Plan. He worked for Intel Corporation for over 33 years, where he served in various positions within the corporation. When Mr. Berkeley retired from Intel, he elected the 100% joint and survivor annuity offered by the Plan as a "Qualified" joint and survivor annuity by default. His benefits were calculated based on the outdated assumptions about his longevity. Had Mr. Berkeley's benefits been determined using reasonable actuarial assumptions (such as those set forth in 26 U.S.C. § 417(e), discussed below), his monthly pension payment would be larger. As a result, he suffered harm from Defendants' use of the Plan's outdated and unreasonable actuarial assumptions to determine his monthly joint and survivor annuity payment .

**Defendants**

23.     <u>Intel Corporation</u> ("Intel") is a technology company that designs and manufactures semiconductor chips. Its headquarters is located at 2200 Mission College Boulevard, Santa Clara, California, within the San Jose Division of the Norther District of California. Intel does business

throughout the country.

24.     Intel is the "plan sponsor" for the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

25.     Intel makes contributions to the Plan to fund retirement benefits promised under the Plan.

26.     Pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), Intel put into force the written instrument according to which the Plan was established and maintained. This written instrument—referred to as the Plan Document—is at issue in this case.

27.     The Administrative Committee of the Intel Minimum Pension Plan (the "Administrative Committee") is the Plan's "administrator" within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). It is generally responsible for the administration of the Plan.

28.     Under the Plan Document, the Administrative Committee is and was a "named fiduciary" of the Plan at all relevant times within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a). As such, the Administrative Committee had and has the authority to control and manage the operation and administration of the Plan.

29.     Members of the Administrative Committee are appointed by members of the Board of Directors of Intel Corporation.

30.     Intel granted the Administrative Committee broad discretionary authority and responsibility with respect to the Plan's administration, including the power "to issue and change rules, regulations and procedures deemed necessary or appropriate for the proper conduct and administration of the Plan;" "to cause to be prepared and furnished to Participants and Beneficiaries a general explanation of the Plan and all other information required to be furnished to them under Federal law or the provisions of the Plan;" and "to correct any defect, including but not limited to mathematical or arithmetical errors, in such manner and to such extent as the Administrative Committee shall deem necessary to carry out the purposes of the Plan, including through governmental correction programs for retirement plans."

31.     Based on the Administrative Committee's discretionary authority and/or discretionary

responsibility for Plan administration set forth in the Plan Document, the Administrative Committee is also a Plan fiduciary within the meaning of ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii).

## IV. LEGAL BACKGROUND

### A. Actuarial Equivalence

32.    Actuarial equivalence is a computation that is designed to ensure that, all else being equal, all forms of pension payments have the same economic value as each other.

33.    Generally, an actuarial equivalence computation considers the expected longevity of participants and their spouses, and an interest rate which reflects the time value of money through a reasonable rate of return based on current market conditions.

34.    In order for the economic value of benefits to be equivalent, the assumptions used to perform an actuarial equivalence computation must be reasonable.

35.    The Treasury provides reasonable interest rates and mortality tables that are regularly updated. *See* 26 U.S.C. § 417(e)(3). These interest rates and mortality tables provide a reference point that ensures actuarial equivalence for the conversion of benefits among different forms.

36.    For a "qualified joint and survivor annuity," ERISA § 205(a), 29 U.S.C. § 1055(a) requires that pension plans offer married participants the option of receiving a payment stream for their life and their spouse's life after the retiree dies; this is a "joint and survivor annuity." ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

37.    ERISA also provides that the joint and survivor annuity shall be "th*e actuarial equivalent of a single annuity* for the life of the participant." ERISA §§ 205(d)(1)(B), (d)(2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B), 1055(d)(2)(A)(ii) (emphasis added). This definition is repeated in the Tax Code provision of ERISA at 26 U.S.C. § 417(b)(2) (defining "Qualified Joint and Survivor Annuity" as "the actuarial equivalent of a single annuity for the life of the participant") and § 417(g)(1)(B) (defining "Qualified Optional Survivor Annuity" as "the actuarial equivalent of a single annuity for the life of the participant").

38.    Similarly, the Treasury regulations concerning joint and survivor annuities require that a "qualified joint and survivor annuity must be at least the *actuarial equivalent of the normal*

*form of life annuity* or, if greater, of any optional form of life annuity offered under the plan. Equivalence may be determined, on the basis of *consistently applied **reasonable*** actuarial factors[.]" 26 C.F.R. § 1.401(a)-11(b)(2) (emphasis added).

39.     Treasury regulations explain this means "in the case of a married participant, the QJSA [Qualified Joint and Survivor Annuity] must be *at least as valuable as any other optional form of benefit payable under the plan at the same time.*" 26 C.F.R. § 1.401(a)-20 Q&A-16 (emphasis added).

40.     In effect, the default form of pension annuity paid to a married retiree should have the same value as the single life annuity that retiree could have elected and would be paid to that retiree's analogous unmarried co-worker of the same age.

**B.     Non-Forfeitability**

41.     ERISA § 203(a), 29 U.S.C. § 1053(a), sets forth "Nonforfeitability requirements," which provide that "an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age[.]"

42.     ERISA § 3(22); 29 U.S.C. § 1002(22) defines "normal retirement benefit" as "the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age."

43.     The Treasury regulation which "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements," 26 C.F.R. § 1.411(a)-4(a), states that "adjustments i***n excess of reasonable actuarial reductions***, can result in rights being forfeitable." (emphasis added).

44.     Thus, distribution of retirement benefits that are less than their actuarial equivalent value constitutes an impermissible forfeiture under ERISA § 203(a), 29 U.S.C. § 1053(a).

## V.  FACTUAL ALLEGATIONS

**A.     The Plan Employed Highly Outdated and Unreasonable Actuarial Assumptions in Determining Class Members' Benefits, Resulting in Significant Harm**

45.     The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

46.     Pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), the Plan is established and maintained according to a written instrument (the "Plan Document").

47.     The Plan provides retirement benefits to a substantial number of Intel employees who commenced employment before January 1, 2011.

48.     As of December 31, 2021, the Plan had 35,438 participants.

49.     Under the Plan Document, a participant's normal retirement benefit is expressed as a single life annuity, meaning a series of monthly benefit payments beginning at retirement and continuing until a participant's death. This is the default form of payment for unmarried participants.

50.     For married participants, the default form of payment is a 100% joint and survivor annuity. That means the participant's surviving spouse receives 100% of whatever amount the participant received during their lifetime.

51.     Participants also may elect one of several optional forms of benefits, including a 50% joint and survivor annuity, a years' certain and continuous annuity (which provides an annuity that guarantees a set number of years of payments, even if the participant dies before all of those payments have been made), a single life annuity, and a lump sum.

52.     In certain circumstances, the spouse of a participant who dies before commencing retirement benefits is entitled to what is known as a "qualified preretirement survivor annuity." As required by ERISA § 205(e), 29 U.S.C. § 1055(e), the pre-retirement survivor annuity provides the surviving spouse an annuity equal to the survivor annuity portion of the qualified joint and survivor annuity the participant would have been entitled to had he not died. Under the Plan, the qualified joint and survivor annuity is a 100% joint and survivor annuity, meaning that the surviving spouse receives 100% of the amount the participant would have received upon commencement of benefits.[2]

53.     To determine the amount of the joint and survivor annuities for participants who commenced benefits, the Plan converted the participant's single life annuity using the following

---

[2] Because the amount of the pre-retirement survivor annuity is simply a reflection of how the Plan calculates the joint and survivor annuity the participant would otherwise have received, references to the Plan's calculation of joint and survivor annuities also include the Plan's calculation of pre-retirement survivor annuities.

assumptions: 1983 Group Annuity Mortality tables consisting of 2/3rds male rates and 1/3rd female rates to apply to all participants and beneficiaries and an interest rate equal to the Pension Benefit Guaranty Corporation immediate rate used for valuing benefits upon plan termination which is in effect at the beginning of the calendar quarter in which the employee's separation from service occurs.

54. The 1983 Group Annuity Mortality Table – ("GAM-83") is a mortality table developed by the Group Annuity Mortality Committee from the Society of Actuaries in 1983. It was based on mortality experience data among insured group annuitants over the years 1973-81.

55. Relatedly, the GAM-83 was based on a cross-section of "blue-collar" workers, who generally have decreased longevity compared to "white-collar workers."

56. The actuarial community, represented by the Society of Actuaries, regularly updates mortality tables as it gathers additional experience data demonstrating changes in longevity.

57. In 1994, the Society of Actuaries released a replacement table for the GAM-83, called the 1994 Group Annuity Reserve Table ("GAR-94"). It was developed by the Society of Actuaries to replace the GAM-83 after a study of more recent mortality experience revealed that the GAM-83 was no longer adequate for valuation purposes because people were living longer than the GAM-83 assumed and were expected to continue experiencing mortality improvements.

58. The Society of Actuaries has continued to update its published mortality tables to reflect steady long-term improvements in Americans' longevity resulting from changes in life-style and medical technology.

59. The Plan, however, continues to utilize outdated mortality assumptions when calculating joint and survivor benefits for Participants. It thus assumes Participants are likely to die sooner than recent actuarial experience data supports.

60. Though the Plan Document purported to comply with ERISA and all other applicable laws, the Plan did not and does not in fact pay to Class members the "actuarial equivalent" for joint and survivor annuities.

61. The mortality table employed by the Plan is 40 years out of date, despite dramatic increases in longevity of the American public. Those increases are reflected in the mortality tables

provided for by 29 U.S.C. § 1055(g), which are updated routinely by the Treasury Department.

62.     Nonetheless, for those who received a joint and survivor annuity, the Plan's actuarial assumptions are outdated and unreasonable. When combined with the Plan's discount rate, the outdated mortality assumptions result in Defendants paying joint and survivor annuities that are less than the actuarial equivalent value of a participant's single life annuity benefit.

63.     Indeed, the calculation of a joint and survivor annuity using reasonable mortality assumptions (for example, those prescribed by 26 U.S.C. § 417(e), which employ regularly updated assumptions published by the Treasury Department), is substantially more favorable for Class members than the use of the Plan's outdated and unreasonable assumptions.

64.     Take a participant who retired at normal retirement age (65) with a spouse the same age who elected a 100% joint and survivor annuity. That participant and their surviving spouse are receiving approximately 5% less than they would under § 417(e). And many participants' benefits have been reduced to an even greater degree compared to the reasonable assumptions set forth under § 417(e).

65.     The underpayment suffered by participants is even greater than what 417(e) assumptions reveal when considering the mortality experience pertinent to a white-collar annuitant population.

66.     Plaintiff Berkeley is suffering from this underpayment given the Plan's outdated and unreasonable actuarial assumptions.

67.     These underpayments will reoccur in the participant's monthly pension payments.

68.     In aggregate, the Plan's failure to provide actuarially equivalent joint and survivor annuities has caused (and will cause) Class members to lose millions of dollars in benefits.

69.     The Administrative Committee, as the Plan's named fiduciary and plan administrator, was responsible for calculating and paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violate ERISA, in which case ERISA's fiduciary duties required the Administrative Committee to act in accordance with ERISA rather than the Plan. *See* 29 U.S.C. § 1104(a)(1)(D).

70.     It is unreasonable and contrary to ERISA for Defendants to fail to pay Plan

participants and beneficiaries actuarially equivalent benefits.

71.     Because ERISA requires that plan fiduciaries treat all plan participants equally and equitably, the Administrative Committee must act loyally and prudently to ensure that all participants are receiving the actuarial equivalent of their single life annuity. But, despite having authority under the Plan to update the Plan's actuarial assumptions, the Administrative Committee breached its fiduciary duties and instead calculated retirement benefits using the Plan's outdated and unreasonable assumptions, which penalize participants for being married, compared to those who are single at retirement and thus receive an (unreduced) single life annuity. That breach, in turn, allowed the entity that controls the Administrative Committee, Intel Corporation, to save money by reducing the amount it had to contribute to the Plan to fund benefits.

72.     Moreover, Defendants failed to disclose to participants that they would receive less than the actuarial equivalent value of their accrued, vested pension benefit if they selected a joint and survivor annuity.

**B.     The Plan Uses Updated Actuarial Assumptions for Other Purposes**

73.     For purposes of a plan sponsor's minimum funding of pension benefits, ERISA requires that "the determination of any present value or other computation under this section shall be made on the basis of actuarial assumptions and methods—(A) each of which is reasonable (taking into account the experience of the plan and reasonable expectations), and (B) which, in combination, offer the actuary's best estimate of anticipated experience under the plan." ERISA § 303(h), 29 U.S.C. § 1083(h).

74.     Here, the Plan's minimum funding requirements were determined for 2020 using Pri-2012, white collar, adjusted for contingent annuitants in payments and mortality improvement scale MP-2021. This mortality assumption reflects both the Plan's white-collar population and mortality improvements through present day.

75.     As a publicly traded Company, Intel must also disclose the present value of its pension benefit obligations ("PBO") to investors in SEC Filings to inform investors about the size of the pension obligation it is bound to pay.

76. Based on information and belief, Intel uses the same, updated, white-collar mortality assumptions to calculate its PBO as it uses to calculate its ERISA § 303(h) minimum funding obligation.

77. Moreover, for individuals who elect to receive a lump sum payment in lieu of an annuity, the Plan applies the reasonable and regularly updated actuarial assumptions established pursuant to 26 U.S.C. § 417(e).

78. In other words, the actuarial assumptions the Plan uses for ERISA's minimum funding requirements and lump sum payments assume significantly greater longevity than the Plan does for converting joint and survivor annuities. The Plan therefore uses different assumptions, regarding the same variables, to calculate ERISA funding requirements and lump sum payments (using **updated** assumptions), from those it uses to calculate benefit reductions for joint and survivor annuities (using **outdated** assumptions).

79. Thus, the Plan does not use "reasonable" actuarial assumptions based on "the experience of the plan and reasonable expectations" and which "offer the actuary's best estimate of anticipated experience under the plan" when calculating Plan participants' joint and survivor annuities, resulting in a reduction of benefits that is not permitted by ERISA.

**C.  Defendants Misrepresented the Amount of Participants' ERISA-Protected Benefits, Reducing Intel's Funding Obligations and Expenses**

80. ERISA requires that a fiduciary provide accurate information to participants so that they can make informed decisions about their retirement benefit choices. *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 872 (7th Cir. 2013); *Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 504 F.3d 818, 823-24 (9th Cir. 2007); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547-58 (6th Cir. 1999).

81. When deciding if and when to retire, and what form of benefit to elect, Plaintiff and the Class relied upon the accuracy and sufficiency of information provided to them by Defendants to plan for retirement.

82. Defendants provided information to Class members detailing the amount of retirement benefits they would receive under various forms of retirement benefits.

---

13

83.     In particular, Defendants represented to Class members that they would receive a "Qualified" joint and survivor annuity (which, under ERISA, means an annuity that is the actuarial equivalent of a single life annuity, *see* 29 U.S.C. § 1055(d)), unless they and their spouses consented in notarized writing to elect a single life annuity, lump sum, or other non-Joint and Survivor Annuity form of benefit.

84.     In communications to participants, Defendants did not disclose the actuarial assumptions they used to calculate the benefit to participants and did not disclose to participants that the assumptions used fail to provide actuarial equivalence. Instead, Defendants informed participants that the Plan was providing married participants the benefit level required by federal law, even though Defendants in fact employed unreasonable actuarial assumptions that are 40 years out of date, which do not result in actuarially equivalent benefits being paid.

85.     Further, Defendants did not disclose to Class members the amount of pension benefit they would have been entitled to if Defendants had utilized reasonable actuarial equivalence assumptions.

86.     Thus, Class members were forced to choose between improperly reduced joint and survivor annuities and forms of benefit that did not necessarily meet their retirement needs, such as a single life annuity or a single lump sum payment. Class members sacrificed economic value by selecting the joint and survivor annuities, the full actuarial value of which is protected by ERISA but was not disclosed or provided to Class members.

87.     These misrepresentations and failures to disclose material information prevented Class members from adequately assessing what form of benefit to elect and how best to plan for their retirements.

88.     Intel financially benefitted by failing to disclose to Class members that they were receiving less than the actuarially equivalent value of their ERISA-protected pensions.

89.     Intel, in fact, received and continues to receive direct financial benefits from paying participants joint and survivor annuities that are less than the law allows, which reduces Intel's funding obligations to the Plan.

# VI. CLASS ALLEGATIONS

90.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and participants in and beneficiaries of the Plan who had their benefits calculated pursuant to the Plan's actuarial assumption, and who are receiving a joint and survivor annuity (or, for beneficiaries whose spouses died before commencing benefits, a pre-retirement survivor annuity) which is less than the value of the single life annuity converted to a joint and survivor annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e).

## A.     Numerosity

91.     The members of the Class are so numerous that joinder of all members is impractical. To the best of Plaintiff's knowledge based on the available information, the Class includes thousands of individuals. Based on available governmental filings, as of January 1, 2021, there were approximately 35,000 participants and beneficiaries receiving or entitled to benefits under the Plan.

## B.     Commonality

92.     There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

    A.  Whether the actuarial assumptions used to determine the value of the joint and survivor annuities paid to Class members violate the actuarial equivalence requirements of ERISA.

    B.  Whether those assumptions illegally caused Class members to forfeit their vested benefits.

    C.  Whether the Administrative Committee violated its ERISA fiduciary duties of loyalty, prudence, and to follow the Plan Document *only if* its terms are consistent with ERISA.

    D.  Whether the Administrative Committee should be enjoined from applying the outdated actuarial assumptions to the Class and instead be required to calculate benefits for Class members based on reasonable actuarial equivalence calculations which are consistent

with the Plan's other actuarial equivalence determinations, including the assumptions it applies to those who elect lump sums.

    E.   Whether the Plan should be reformed to eliminate any actuarial assumptions which reduce pension benefits paid or payable to Class members below the actuarial equivalent value of those benefits.

    F.   Whether Class members should be paid additional benefits under the Plan as reformed to provide them the difference between the benefit the Plan previously determined to be their reduced benefit and the actuarially equivalent value of their benefit.

**C.    Typicality**

93.    Plaintiff's claims are typical of the claims of the members of the Class because they arise out of the same policies and practices as alleged herein, and all members of the Class are affected by Defendants' wrongful conduct.

**D.    Adequacy**

94.    Plaintiff will fairly and adequately represent the Class, and he has retained counsel experienced and competent in the prosecution of ERISA class actions. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

**E.    Rule 23(b)(1) Requirements**

95.    The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

96.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.    Rule 23(b)(2) Requirements**

CLASS ACTION COMPLAINT

97.    Class action status is also warranted under Rule 23(b)(2) because Defendants have acted vis-à-vis the Plan as a whole, which should result in appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

98.    Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each Class member equally.

### G.    Rule 23(b)(3) Requirements

99.    If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include those listed above in Section VI.B.

100.    There are no difficulties in managing this case as a class action.

## VII.  CAUSES OF ACTION

### COUNT I: VIOLATION OF THE JOINT AND SURVIVOR ANNUITY REQUIREMENT OF ERISA § 205, 29 U.S.C. § 1055 (AGAINST ALL DEFENDANTS)

101.    Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

102.    ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d) requires that all plans shall provide benefits in the form of a "Qualified Joint and Survivor Annuity" and "Qualified Optional Survivor Annuity," and ERISA § 205(d), 29 U.S.C. § 1055(d) provides that they must be "the actuarial equivalent of a single annuity for the life of the participant."

103.    Treasury regulations setting forth plan requirements provide that a "qualified joint and survivor annuity must be at least the actuarial equivalent of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan. . . . determined, on the basis of consistently applied reasonable actuarial factors[.]" 26 C.F.R. § 1.401(a)-11(b)(2).

104. In other words, ERISA § 205(a)-(d) requires that at the time the participants retire, if their benefit is taken as a joint and survivor annuity, the value of such joint annuity must be no less than the actuarial equivalent of their single life annuity.

105. As explained above, the actuarial assumptions applicable to Class members' joint and survivor annuities reduces Class members' benefits to less than the actuarial equivalent value of their ERISA protected benefits expressed as the single life annuity at the same retirement date, and they are based on different actuarial assumptions than the Plan uses for determining its funded status and for calculating other forms of benefits.

106. Thus, the Plan's actuarial assumptions for joint and survivor annuities applicable to Class members violate ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

107. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

108. Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate equitable relief against Defendants to redress the violations of ERISA § 205, 29 U.S.C. § 1055 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

109. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

110. ERISA § 409(a), 29 U.S.C. § 1109(a) mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

111. Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiff seeks all available and appropriate remedies against the Administrative Committee to

redress violations of ERISA § 205, 29 U.S.C. § 1055 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

**COUNT II: VIOLATION OF THE ANTI-FORFEITURE RULES OF
ERISA § 203, 29 U.S.C. § 1053
(AGAINST ALL DEFENDANTS)**

112.    Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

113.    ERISA § 203(a) of ERISA, 29 U.S.C. § 1053(a), sets forth ERISA's "Nonforfeitability requirements," which provide that "an employee's right to his normal retirement benefit is non-forfeitable[.]" The Treasury regulation, 26 C.F.R. § 1.401(a)-14(c), that "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements" states that "adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."

114.    Thus, paying participants less than the actuarial equivalent of their accrued vested benefit results in an illegal forfeiture of their vested benefits. ERISA § 203(a), 29 U.S.C. § 1053(a).

115.    As explained above, Class members received less than the actuarial equivalent of their benefits (expressed as single life annuities) because the Plan's actuarial assumptions for calculating Class members' joint and survivor annuities provided them with less than the actuarial equivalent of their ERISA-protected benefits.

116.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

117.    Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available and appropriate equitable relief against Defendants to redress the violations of ERISA § 203(a), 29 U.S.C. § 1053(a) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

118.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

119. ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

120. Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiff seek all available and appropriate remedies against the Administrative Committee to redress violations of ERISA § 203(a), 29 U.S.C. § 1053(a) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

## COUNT III: BREACHES OF FIDUCIARY DUTY
## (AGAINST THE ADMINISTRATIVE COMMITTEE)

121. Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

122. During all relevant times, the Administrative Committee was a named fiduciary of the Plan and was responsible for paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violated ERISA.

123. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires the Administrative Committee, as the Plan Administrator charged with paying benefits consistently with ERISA's requirements, to act loyally in the best interest of all Plan participants, including the Class members. This duty further requires the Administrative Committee to communicate with Plaintiff and other Plan participants honestly and accurately.

124. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that the Administrative Committee, as the Plan Administrator charged with paying benefits consistently with ERISA's requirements, act prudently when determining benefits owed to Plan participants, which includes ensuring that all benefits paid pursuant to the Plan conformed with ERISA's statutory requirements and Treasury regulations.

125. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) requires that a fiduciary with respect to a plan shall discharge their duties "solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" subchapters I and III of ERISA.

126. The Administrative Committee breached these fiduciary duties by, *inter alia*:

A. Disloyally reducing Class members' pension benefits through application of outdated and unreasonable actuarial assumptions in violation of 29 U.S.C. § 1104(a)(1)(A), which: (i) resulted in Class members receiving less than the actuarial equivalent of their vested accrued benefit and (ii) enabled Intel, as Plan Sponsor, to save money by reducing the amount it contributed and contributes to the Plan to fund benefits;

B. Disloyally providing inaccurate and misleading information to Class members by misrepresenting that Class members would receive a "Qualified" joint and survivor annuity calculated using reasonable actuarial assumptions, and by failing to tell Plan participants that the joint and survivor annuities—which are the default option for married participants—are worth less than the single life annuities available at retirement and are based on outdated assumptions;

C. Failing to act prudently when determining benefits owed to Plan participants by, *inter alia*, ensuring that all benefits paid are/were in conformity with ERISA's requirements set forth in 29 U.S.C. §§ 203 and 205, which caused Class members to receive less than the full value of their ERISA-protected accrued benefit and violated the Administrative Committee's duty of prudence set forth at 29 U.S.C. § 1104(a)(1)(B);

D. Failing to update the unreasonable and outdated assumptions applied to Class members' benefits, despite having discretionary authority under the Plan's terms to update the assumptions and an obligation to adhere to the law;

E. Following Plan terms that violate ERISA (specifically 29 U.S.C. §§ 1053 and 1055), which constitutes a fiduciary breach, 29 U.S.C. § 1104(a)(1)(D), and results in

participants receiving less than the actuarial equivalent of their vested accrued benefit and also results in participants forfeiting a portion of their vested accrued benefit;

127. As a direct and proximate result of these fiduciary breaches, Class members lost millions of dollars in vested accrued pension benefits.

128. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

129. ERISA § 409(a), 29 U.S.C. § 1109(a) mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

130. Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiff, on behalf of the Plan, seeks all available and appropriate remedies against the Administrative Committee to redress and make good to the Plan all losses caused by its violations of ERISA § 404, 29 U.S.C. § 1104, including, but not limited to the relief to the Plan requested below in the Prayer For Relief.

131. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

132. Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks all available equitable relief against the Administrative Committee to redress its violations of ERISA and provide all appropriate relief to Plan participants, including, but not limited to the relief requested below in the Prayer For Relief.

## VIII. PRAYER FOR RELIEF

Plaintiff prays that judgment be entered against Defendants on all claims and seek the

following relief:

A. A declaratory judgment that the Plan's actuarial assumptions for joint and survivor annuities applicable to the Class violate ERISA's anti-forfeiture provision at § 203(a), 29 U.S.C. § 1053(a).

B. A declaratory judgment that the Plan's actuarial assumptions for joint and survivor annuities applicable to the Class violate ERISA's actuarial equivalence and joint and survivor annuity requirements set forth in § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

C. A declaratory judgment that the Administrative Committee breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, following Plan terms that violated ERISA and for failing to pay benefits to all Plan participant in conformance with ERISA §§ 203(a) and 205(a)-(d), 29 U.S.C. §§ 1053(a) and 1055(a)-(d).

D. Reformation of the Plan: (i) to provide that Class members receive benefits calculated using updated actuarial assumptions; (ii) to bring the Plan into full compliance with ERISA; and (iii) to pay all benefits owed to Class members based on the reformed plan.

E. An injunction ordering Defendants: (i) to accurately disclose to all Class members their optional forms of benefits as recalculated under the reformed plan, whether or not that individual has started collecting pension benefits; (ii) to eliminate and bar any future use of actuarial assumptions that result in less than the actuarial equivalent value of the participant's single life annuity at retirement; (iii) to bring the Plan into compliance with ERISA §§ 203(a) and 205(a)-(d), 29 U.S.C. §§ 1053(a) and 1055(a)-(d); and (iv) to recalculate and pay all amounts owed to Class members as a result of the violations of ERISA set forth herein.

F. An order requiring Defendants to provide an accounting of all prior payments of benefits to the Class under the Plan for which the outdated and unreasonable assumptions discussed herein were used to determine joint and survivor annuities, and provide information to recalculate those payments to Class members in compliance with ERISA §§ 203(a) and 205(a)-(d), 29 U.S.C. §§ 1053(a) and 1055(a)-(d).

G. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to pay future benefits in accordance with ERISA §§ 203(a) and 205(a)-(d), 29 U.S.C. §§ 1053(a) and 1055(a)-(d).

H. Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA §§ 203(a) and 205(a)-(d), 29 U.S.C. §§ 1053(a) and 1055(a)-(d).

I. Restitution of all amounts Defendants kept in the Plan but were obliged to pay to Plaintiff and other Class members in accordance with ERISA §§ 203(a) and 205(a)-(d), 29 U.S.C. §§ 1053(a) and 1055(a)-(d).

J. Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of the violations of ERISA §§ 203(a) and 205(a)-(d), 29 U.S.C. §§ 1053(a) and 1055(a)-(d).

K. An order estopping Defendants from applying to the Class the actuarial assumptions that violate ERISA §§ 203(a) and 205(a)-(d), 29 U.S.C. §§ 1053(a) and 1055(a)-(d) and requiring Defendants instead to pay benefits in accordance with ERISA §§ 203(a) and 205(a)-(d), 29 U.S.C. §§ 1053(a) and 1055(a)-(d) .

L. Relief to the Plan from the Administrative Committee for its violations of ERISA § 404, 29 U.S.C. § 1104, including a declaration that the actuarial assumptions applied to Class members' joint and survivor annuities violate ERISA §§ 203(a) and 205(a)-(d), 29 U.S.C. §§ 1053(a) and 1055(a)-(d); removal of the members of the Administrative Committee; restoration of losses to the Plan and its participants caused by the Administrative Committee's fiduciary violations; disgorgement of any benefits and profits the Administrative Committee received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to Class members caused by fiduciary breach so that those amounts owed can be provided to Plan participants; and all appropriate injunctive relief, such as an order requiring the Administrative Committee to pay all Plan participants fully ERISA-compliant benefits in the future and to ensure that all benefits it pays to participants conform to the

24

requirements set forth in ERISA §§ 203(a) and 205(a)-(d), 29 U.S.C. §§ 1053(a) and 1055(a)-(d).

M.  An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law.

N.  An award of Plaintiff's attorneys' fees, expenses and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

O.  An order awarding, declaring or otherwise providing Plaintiff and the Class any other appropriate equitable relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems just and proper.

Dated:  January 23, 2023          COHEN MILSTEIN SELLERS & TOLL PLLC

By:      /s/ *Michelle C. Yau*
_____
Michelle C. Yau (forthcoming *pro hac vice*)
Daniel R. Sutter (forthcoming *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600
myau@cohenmilstein.com
dsutter@cohenmilstein.com

Shaun P. Martin (Cal. Bar. No. 158480)
5998 Alcala Park, Warren Hall 109C
San Diego, CA 92110
Telephone: (619) 260-2347
Facsimile: (619) 260-7933
smartin@sandiego.edu

*Attorneys for Plaintiff*