Michelle C. Yau (*pro hac vice*)
Daniel R. Sutter (*pro hac vice*)
Caroline E. Bressman (*pro hac vice*)
Allison C. Pienta (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Eighth Floor
Washington, DC 20005
(202) 408-4600
myau@cohenmilstein.com
dsutter@cohenmilstein.com
cbressman@cohenmilstein.com
apienta@cohenmilstein.com

Shaun P. Martin (Cal. Bar No. 158480)
5998 Alcala Park, Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Facsimile: (619) 260-7933
smartin@sandiego.edu

*Attorneys for Plaintiff and Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| GREGG BERKELEY, on behalf of himself and all others similarly situated,<br><br>      *Plaintiff*,<br><br>  v.<br><br>INTEL CORPORATION and the ADMINISTRATIVE COMMITTEE OF THE INTEL MINIMUM PENSION PLAN,<br><br>      *Defendants*. | Civil Action No. **5:23-cv-00343-EJD**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: May 1, 2025<br><br>Time: 9:00 a.m. |

## <u>NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION</u>

Please take notice that on May 1, 2025 at 9:00 a.m. in Courtroom 4 of the San Jose Courthouse of the United States District Court for the Northern District of California, before the Honorable Judge Edward J. Davila, Plaintiff will and hereby does move for class certification.

Plaintiff seeks an order certifying the following class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All Plan participants and beneficiaries who are receiving a joint and survivor annuity (or, for beneficiaries whose spouses died before commencing benefits, a pre-retirement survivor annuity) which is less than the value of the single life annuity converted to a joint and survivor annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e) with an annual stability and August lookback period.

Plaintiff also requests to be appointed as class representative and to have Cohen Milstein Sellers & Toll PLLC and Shaun Martin of the University of San Diego Law School appointed as class counsel for the proposed class under Fed. R. Civ. P. 23(g).

The grounds for Plaintiff's motion are set forth in the Memorandum of Points and Authorities below. In further support of the motion, Plaintiff submits declarations from himself and his counsel, as well as certain exhibits attached thereto.

Dated: January 24, 2025

Respectfully submitted,

By: */s/ Michelle C. Yau*

Michelle C. Yau (*pro hac vice*)
Daniel R. Sutter (*pro hac vice*)
Caroline E. Bressman (*pro hac vice*)
Allison C. Pienta (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Eighth Floor
Washington, DC 20005
(202) 408-4600
myau@cohenmilstein.com
dsutter@cohenmilstein.com
cbressman@cohenmilstein.com
apienta@cohenmilstein.com

Shaun P. Martin (Cal. Bar No. 158480)
5998 Alcala Park, Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Facsimile: (619) 260-7933
smartin@sandiego.edu

*Attorneys for Plaintiff and Proposed Class*

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Civil Action No. 5:23-cv-00343-EJD

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION ................................. i

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

INTRODUCTION ........................................................................ 1

RELEVANT BACKGROUND ................................................................ 2

    I.      Statutory Background ........................................................ 2

    II.     Factual Background .......................................................... 3

          A.     The Plan and Actuarial Equivalence ................................... 3

          B.     The Plan's Calculation of SLAs and JSAs. ............................. 4

          C.     Defendants' Failure to Provide Actuarially Equivalent JSA
                 Benefits ........................................................... 6

          D.     Injury to the Proposed Class ........................................ 9

PLAINTIFF'S CLAIMS AND THE PROPOSED CLASS .......................................... 9

LEGAL STANDARD ...................................................................... 10

    I.      The Class Meets All Requirements of Rule 23(a) .............................. 10

          A.     The Class Is Sufficiently Numerous .................................. 10

           B.     The Class Satisfies the Commonality Requirement .................... 11

           C.     The Class Representative's Claims Are Typical of Those
                 of the Class ....................................................... 13

           D.     The Class Representative and Counsel Will Adequately
                 Represent the Class's Interests .................................... 14

                1.     *No Conflicts of Interest Are Present* ........................ 14

               2.     *Plaintiff Berkeley and Counsel Have Vigorously Prosecuted*
                     *the Case* ................................................... 17

    II.     Class Certification Is Appropriate Under All Subsections of Rule 23(b) ........... 17

          A.     Class Certification Is Appropriate Under Rule 23(b)(1) ............... 18

          B.     Class Certification Is Appropriate Under Rule 23(b)(2) ............... 20

          C.     Class Certification Is Appropriate Under Rule 23(b)(3) ............... 22

                1.     *Common Questions Predominate* ................................ 22

                2.     *Class Adjudication Is the Superior Method for Resolving*
                       *This Action* ................................................ 23

CONCLUSION .......................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                        **Page(s)**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ................................................................................11

*Adams v. U.S. Bancorp*,
  635 F. Supp. 3d 742 (D. Minn. 2022)..............................................................1, 3

*Allen v. Similasan Corp.*,
  2017 WL 1346404 (S.D. Cal. Apr. 12, 2017)........................................................12

*Allison v. Citgo Petroleum Corp.*,
  151 F.3d 402 (5th Cir. 1998) ................................................................................22

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................................17, 18

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ..............................................................................................10

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ..........................................................................16

*Ballas v. Anthem Blue Cross Life & Health Ins. Co.*,
  2013 WL 12119569 (C.D. Cal. Apr. 29, 2013) ....................................................11

*Bally v. State Farm Life Ins. Co.*,
  335 F.R.D. 288 (N.D. Cal. 2020)..........................................................................16

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*,
  270 F.R.D. 488 (N.D. Cal. 2010)..........................................................................20

*Barnes v. AT&T Pension Benefit Plan-NonBargained Program*,
  273 F.R.D. 562 (N.D. Cal. 2011)..........................................................................13

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
  338 F.3d 755 (7th Cir. 2003) ................................................................................21

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ..........................................................................11, 16

*Boggs v. Boggs*,
  520 U.S. 833 (1997)................................................................................................3

*Bumpus v. Realogy Brokerage Grp., LLC*,
  2022 WL 867256 (N.D. Cal. Mar. 23, 2022)........................................................23

*Buus v. WAMU Pension Plan*,
  251 F.R.D. 578 (W.D. Wash. 2008) ......................................................................21

iv

*Californians for Disability Rts., Inc. v. Cal. Dep't of Transp.*,
    249 F.R.D. 334 (N.D. Cal. 2008) .......................................................................................17

*In re Citigroup Pension Plan ERISA Litig.*,
    241 F.R.D. 172 (S.D.N.Y. 2006) ................................................................................18, 21

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Prac. Litig.*,
    2011 WL 6372412 (N.D. Cal. Dec. 20, 2011) ...................................................................21

*DZ Reserve v. Meta Platforms, Inc.*,
    2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ..................................................13, 14, 22

*Franklin v. Duke Univ.*,
    2024 WL 1740479 (M.D.N.C. Apr. 23, 2024) ...................................................................1

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ..........................................................................................................13

*Hamrick v. E.I. du Pont de Nemours & Co.*,
    2024 WL 359240 (D. Del. Jan. 31, 2024) ..........................................................................1

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................................11, 22

*Herndon v. Huntington Ingalls Indus., Inc.*,
    No. 4:19-cv-00052 (E.D. Va. Jan. 17, 2020), ECF 48 ........................................................2

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ...........................................................................................13

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008) ...........................................................................2, 13, 18

*Kernan v. Metro. Life Ins. Co.*,
    2023 WL 3620884 (S.D.N.Y. Mar. 17, 2023 ........................................................12, 15, 20

*Klawonn v. Bd. of Dirs. for Motion Picture Indus. Pension Plans*,
    2024 WL 653398 (C.D. Cal. Jan. 18, 2024) .....................................................................12

*Lamartina v. VMware, Inc.*,
    2024 WL 3286059 (N.D. Cal. July 2, 2024) .....................................................................11

*Lao v. H&M Hennes & Mauritz, L.P.*,
    2018 WL 3753708 (N.D. Cal. Aug. 8, 2018) ....................................................................11

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .............................................................................................11

*McAlister v. Metro. Life Ins. Co.*,
    2023 WL 5769491 (S.D.N.Y. Sept. 7, 2023) ............................................................ *passim*

v

*McCluskey v. Trs. of Red Dot Corp. Employee Stock Ownership Plan & Tr.*,
    268 F.R.D. 670 (W.D. Wash. 2010) ............................................................20

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ....................................................................13

*Munro v. Univ. of S. Cal.*,
    2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) ..........................................19

*Norris v. Mazzola*,
    2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) ...........................................19

*In re Northrop Grumman Corp., ERISA Litig.*,
    2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ..........................................17

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ....................................................................10

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) .................................................................................19

*Paieri v. W. Conf. of Teamsters Pension Tr.*,
    2024 WL 4554616 (W.D. Wash. Oct. 23, 2024) .........................................1

*Probe v. State Teachers' Ret. Sys.*,
    780 F.2d 776 (9th Cir. 1986) ....................................................................21

*Richards v. FleetBoston Fin. Corp.*,
    235 F.R.D. 165 (D. Conn. 2006) ...............................................................21

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) .......................................................13, 14, 20

*Simpson v. Fireman's Fund Ins. Co.*,
    231 F.R.D. 391 (N.D. Cal. 2005) ..............................................................13

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ....................................................................14

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ..................................................................22

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016).................................................................................22

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2017 WL 2655678 (C.D. Cal. June 15, 2017) ...........................................17

*Urlaub v. CITGO Petroleum Corp.*,
    2022 WL 523129 (N.D. Ill. Feb. 22, 2022) .........................................1, 2, 3

vi

*Urlaub v. Citgo Petroleum Corp.*,
   2024 WL 2209538 (N.D. Ill. May 16, 2024) .......................................................... *passim*

*Vogt v. State Farm Life Ins. Co.*,
   963 F.3d 753 (8th Cir. 2020) ................................................................................ 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................... 10, 11

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) .............................................................................. 13

*Xavier v. Philip Morris USA Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) ................................................................. 11

**Statutes**

26 U.S.C. § 417 ............................................................................................................ 3

29 U.S.C. § 1053(a) ................................................................................................. 3, 15

29 U.S.C. § 1055 ......................................................................................................... 3

29 U.S.C. § 1055(d) ................................................................................................... 15

29 U.S.C. §§ 1055(d)(1)(B) ...................................................................................... 1, 3

29 U.S.C. §§ 1055(d)(2)(A)(ii) .................................................................................. 1, 3

**Other Authorities**

26 C.F.R. § 1.401(a)-11(b)(2) .................................................................................... 1, 3

26 C.F.R. § 1.411(a)-4(a) .......................................................................................... 1, 3

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 10

Fed. R. Civ. P. 23(a)(4) ............................................................................................. 14

Fed. R. Civ. P. 23(b)(1)(A) ....................................................................................... 18

Fed. R. Civ. P. 23(b)(1)(B) ....................................................................................... 18

Fed. R. Civ. P. 23(b)(2) ............................................................................................. 20

Fed. R. Civ. P. 23 (b)(3) ...................................................................................... 22, 23

William B. Rubenstein et al.,
   *Newberg on Class Actions* § 3:62 (5th ed.) ......................................................... 16

William B. Rubenstein et al.,
   *Newberg and Rubenstein on Class Actions* § 4:1 (6th ed.) ................................. 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This case seeks to rectify the illegal underpayment of pension benefits to married retirees under the Intel Minimum Pension Plan ("Plan"). Plaintiff alleges that Intel (the plan sponsor) and the Administrative Committee of the Plan (the plan administrator and named fiduciary) violated ERISA by paying married retirees and other joint and survivor annuity recipients pension benefits that are worth less than those paid to unmarried retirees. Under ERISA, joint and survivor annuities ("JSAs") for married retirees must be "actuarial[ly] equivalent" to single life annuities ("SLAs") paid to single retirees. 29 U.S.C. §§ 1055(d)(1)(B), (d)(2)(A)(ii). This requires the use of "reasonable actuarial factors" to convert SLA payments to JSA payments. 26 C.F.R. § 1.401(a)-11(b)(2); *see also* 26 C.F.R. § 1.411(a)-4(a) ("Certain adjustments to plan benefits such as adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."); *Urlaub v. CITGO Petroleum Corp.*, 2022 WL 523129, at *6 (N.D. Ill. Feb. 22, 2022) ("Only accurate and reasonable actuarial assumptions can convert benefits from one form to another in a way that results in equal value between the two.").[1]

Defendants uniformly used outdated and unreasonable actuarial assumptions to convert the 1,847 potential class members' SLAs to JSAs, resulting in substantial underpayments compared to what they would have received had Defendants used current, accurate, and reasonable actuarial assumptions to calculate their JSAs. ████████████████████████████

████████████████████████████████████████████████████

---

[1] *Accord Paieri v. W. Conf. of Teamsters Pension Tr.*, 2024 WL 4554616, at *10 (W.D. Wash. Oct. 23, 2024); *Franklin v. Duke Univ.*, 2024 WL 1740479, at *3 (M.D.N.C. Apr. 23, 2024); *Hamrick v. E.I. du Pont de Nemours & Co.*, 2024 WL 359240, at *5 (D. Del. Jan. 31, 2024), *report and recommendation adopted*, 2024 WL 2817966 (D. Del. June 3, 2024); *Adams v. U.S. Bancorp*, 635 F. Supp. 3d 742, 750-54 (D. Minn. 2022).

1    ███████████ Intel chose inaction over bringing the Plan into compliance with ERISA.

2    It is well-settled law that ERISA actions are "paradigmatic" Rule 23(b)(1) cases. *Kanawi*

3    *v. Bechtel Corp.*, 254 F.R.D. 102, 112 (N.D. Cal. 2008) (citation omitted). This case is no different.

4    Defendants used the same actuarial assumptions to calculate JSA benefits for all potential class

5    members. Plaintiffs allege the use of those actuarial assumptions was unlawful because it resulted

6    in all class members' JSAs being less than the actuarial equivalent of their SLAs. To resolve all

7    potential class members' claims in one fell swoop, this Court will decide what ERISA's actuarial

8    equivalence provisions require, whether the Plan provides actuarially equivalent JSA benefits, and

9    the appropriate yardstick for measuring past underpayments. The alternative to class treatment—

10   individual litigation of 1,847 claims—would be unworkable, as the resolution of Plaintiff's claim

11   would be dispositive of the interests of other class members, and thousands of inconsistent

12   individual adjudications would establish incompatible standards for Defendants. Thus, this case is

13   a "good fit" for Rule 23(b)(1) class treatment. *Urlaub v. Citgo Petroleum Corp.*, 2024 WL

14   2209538, at *6 (N.D. Ill. May 16, 2024). Indeed, courts have recently granted class certification

15   for two similar actuarial equivalence cases, and parties have stipulated to certification in another

16   such case. *See, e.g.*, *id.* at *7 (granting Rule 23(b)(1) certification in actuarial equivalence case

17   concerning JSA calculation); *McAlister v. Metro. Life Ins. Co.*, 2023 WL 5769491, at *8 (S.D.N.Y.

18   Sept. 7, 2023) (adopting report & recommendation certifying Rule 23(b)(1) class in actuarial

19   equivalence case); *Herndon v. Huntington Ingalls Indus., Inc.*, No. 4:19-cv-00052 (E.D. Va. Jan.

20   17, 2020), ECF 48 (stipulating to Rule 23(b)(1) certification in actuarial equivalence case).

21   Plaintiff therefore respectfully requests that this Court certify the class under Rule 23(b)(1),

22   (b)(2), or (b)(3).

23                                    **RELEVANT BACKGROUND**

24   **I.     Statutory Background**

25   Because pension payments normally end once the worker dies, spouses (and their

26   dependent children) may be left penniless after the working spouse dies. *Urlaub*, 2022 WL 523129,

27                                             2

28

at *5. For this reason, ERISA requires companies that offer pensions to give (by default and unless specifically waived) all married workers a JSA that ensure the worker's surviving spouse will continue to receive pension payments even after the worker's death. *See* 29 U.S.C. § 1055. Further, to ensure that married participants and their spouses are not shortchanged in the determination of their benefits, Congress required that JSAs must be at least "actuarial[ly] equivalent" to SLAs. *See* 29 U.S.C. §§ 1055(d)(1)(B), (d)(2)(A)(ii); *see also* 26 U.S.C. § 417 (imposing same requirements under pension tax rules). ERISA's regulations explain that to fulfill the "actuarial equivalence" requirement, a plan must employ "reasonable actuarial factors." 26 C.F.R. § 1.401(a)-11(b)(2); *see also* Declaration of Daniel R. Sutter ("Sutter Decl.") Ex. 1, Expert Report of Ian H. Altman, FSA ("Altman Report") at 5-6; Sutter Decl. Ex. 2, Deposition of Ryan Langford ("Langford Tr.") at 73:18-74:10 (actuarial assumptions used to convert SLAs to JSAs must be reasonable).

Additionally, when a pension plan permits a participant to convert the plan's normal retirement benefit into a different form, the plan cannot do so by making unreasonable actuarial adjustments. 29 U.S.C. § 1053(a); 26 C.F.R. § 1.411(a)-4(a) (IRS regulation interpreting parallel forfeiture provision, specifying "[c]ertain adjustments to plan benefits such as adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable"); *supra* p. 1 & n.1.

In other words, the present value of the JSA must be at least the same as the present value of the SLA, which is the Plan's normal form of benefit. *See Adams*, 635 F. Supp. 3d at 751. "As the Supreme Court stated in *Boggs v. Boggs*, 520 U.S. 833, 843 (1997), '[t]he statutory object of the qualified joint and survivor annuity provisions, along with the rest of § 1055, is to ensure a stream of income to surviving spouses.' 'ERISA's solicitude for the economic security of surviving spouses would be undermined by allowing' employers to give a married worker a lower pension than an otherwise similarly situated unmarried worker." *Urlaub*, 2022 WL 523129, at *5.

## II.    Factual Background

### A.    The Plan and Actuarial Equivalence

The Plan provides a normal retirement benefit in the form of an SLA (called an "individual

life annuity" in the Plan Document) to eligible single Plan participants. *See* Sutter Decl. Ex. 3 ("Plan Document") §§ 4(a), 5(a)(i); Sutter Decl. Ex. 2, Langford Tr. 52:24-53:4. An SLA is a form of annuity payment that commences upon a participant's retirement and continues until he or she dies. Sutter Decl. Ex. 3, Plan Document §§ 4(a), 5(a)(i). The SLA is the default form of benefit provided to unmarried participants under the Plan. *Id.* § 5(d)(ii). The Plan also contains a JSA form of benefit. *Id.* §§ 5(a)(ii)-(iii). A JSA is a form of annuity payment that commences upon a participant's retirement and continues until both the participant and their designated beneficiary (typically a spouse) dies. *Id.* A JSA can be structured so that different portions of the retiree's monthly payment continue to their surviving spouse. For instance, the Plan offers a 50% JSA and 100% JSA, which provides that 50% or 100% of a retiree's monthly payment, respectively, would continue to the surviving spouse. *Id.* A 100% JSA is the default form of benefit provided to married participants under the Plan. *Id.* § 5(d)(i). A married participant cannot opt out of a JSA form of pension under the Plan without notarized spousal consent. *Id.* § 5(b)(ii).

Because a JSA provides a stream of payments over the course of two lives, the monthly payment may be adjusted downward so that the aggregate monthly payments expected to be paid to the participant and their beneficiary is the same as is expected to be paid under the SLA form of benefit to the participant. Sutter Decl. Ex. 1, Altman Report at 7-8. In effect, the JSA and SLA must have the same present value. *Id.* Retirement plans, including the Plan, undertake an actuarial procedure to convert the SLA to which a participant is entitled into the JSA. *Id.* at 8. This procedure involves the use of a set of mortality assumptions, which is supposed to reflect how long the stream of payments are expected to continue (i.e., how long the retiree and beneficiary are expected to live), and a discount rate, which is supposed to reflect the time value of money. *Id.* at 8-10. Using outdated or unreasonable actuarial assumptions to convert SLAs to JSAs can cause those forms to lose actuarial equivalence and result in JSAs being less valuable than SLAs. *Id.* at 12-14.

**B.    The Plan's Calculation of SLAs and JSAs**

Participants in the Plan can accrue an SLA benefit in a discrete number of ways. Rather

than provide participants with a traditional pension benefit that reflects solely their years of service and compensation, the Plan uses a formula to calculate participants' normal retirement benefit (the SLA) called a "floor-offset" formula. Under the floor-offset formula, the Plan calculates the monthly SLA by (1) calculating a "floor" based on a traditional pension formula reflecting the participant's years of service and compensation and (2) subtracting from the floor an "offset" derived from an amount based on the participant's account value in another retirement plan. *See* Sutter Decl. Ex. 3, Plan Document § 4(a). The resultant SLA benefit can then be converted to another form of benefit under the Plan (like a JSA, described below). *Id.* § 5(a). The Plan also provides an additional Qualified Supplemental Employee Retirement Plan, or "QSERP," benefit to certain employees, including Plaintiff, *id.* § 4(a)(ii) & App'x D, and also permits participants to transfer balances from other Intel retirement plans into the Plan, *id.* § 9(p). The QSERP benefit and transferred balances from other plans are then converted to an SLA, which in turn may be converted into JSAs. *Id.* §§ 4(a), 5(a), 9(p), App'x D. No matter how a retiree's SLA is calculated, the *same formula* is used to convert that SLA to a JSA.

For married participants, the default form of benefit is a 100% JSA. Sutter Decl. Ex. 2, Langford Tr. 53:11-16. The Plan requires that the JSA amount "shall be Actuarially Equivalent to the Individual Life Annuity"—i.e., the SLA. Sutter Decl. Ex. 3, Plan Document § 5(a). The Plan Document provides a formula that determines all eligible Plan participants' JSA benefit amounts by converting their SLAs to JSAs in a uniform manner. *Id.* § 5(a); Sutter Decl. Ex. 2, Langford Tr. 54:25-55:5. Under this formula, the Plan employs two actuarial assumptions: (1) a mortality rate based on the 1983 Group Annuity Mortality ("GAM-1983 tables"), weighted to consist of 2/3 male rates and 1/3 female rates, and (2) an interest rate equal to the Pension Benefit Guaranty Corporation ("PBGC") immediate rate in effect at the beginning of the quarter in which the participant terminated from employment at Intel. *See* Sutter Decl. Ex. 3, Plan Document § 2(a); Sutter Decl. Ex. 4 ("1st Am. to the Plan Document"). In all events, Intel calculates participants' JSAs by converting the respective participants' SLAs using the above actuarial assumptions. Sutter

Decl. Ex. 2, Langford Tr. 54:19-55:5; Sutter Decl. Ex. 3, Plan Document § 2(a).

Plaintiff Gregg Berkeley is a Plan participant receiving a 100% JSA. Declaration of Gregg Berkeley ("Berkeley Decl.") ¶ 4. His SLAs were calculated from both the Plan's floor-offset and QSERP components, then converted to JSAs utilizing the Plan's outdated mortality and interest-rate factors for JSA conversions. Based on the analysis of Plaintiff's expert, Ian Altman, Plaintiff Berkeley's current JSA benefit is lower than what his JSA benefit would be had it been calculated using the reasonable and current mortality and interest rate assumptions specified in Internal Revenue Code § 417(e), with an annual stability period and an August lookback period. Sutter Decl. Ex. 1, Altman Report at 25-26. The referenced stability period and lookback month are the same as those specified in the Plan for various actuarial calculations. Sutter Decl. Ex. 3, Plan Document § 2(h). In connection with IRC § 417(e), the government periodically publishes recent mortality studies prepared by the Society of Actuaries and interest rates reflecting contemporary market conditions. Sutter Decl. Ex. 1, Altman Report at 19-20.

### C.    Defendants' Failure to Provide Actuarially Equivalent JSA Benefits

Plaintiff alleges that Defendants failed to provide actuarially equivalent JSA benefits as required under ERISA due to the Plan's use of unreasonable and outdated actuarial assumptions. In fact, Defendants have employed the same outdated mortality assumptions for this calculation since the Plan's inception in 1988. *Compare* Sutter Decl. Ex. 5, (1988 Plan Document) § 2.02, *with* Sutter Decl. Ex. 3, Plan Document § 2(a); Sutter Decl. Ex. 6, Deposition of Amber Wiseley ("Wiseley Tr.") 90:18-91:10; Sutter Decl. Ex. 2, Langford Tr. 59:17-60:6; Sutter Decl. Ex. 1, Altman Report at 12-13.

Defendants have left the Plan's mortality assumption for SLA-to-JSA conversions unchanged despite substantial increases in life expectancies in the U.S. since 1983. *See* Sutter Decl. Ex. 1, Altman Report at 13; *see also* Sutter Decl. Ex. 7 ████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████). For example, the life expectancy of an age 65 male in the U.S. as reflected in the current § 417(e) mortality table has improved by 15.6% compared to the 1983 GAM. Sutter Decl. Ex. 1, Altman Report at 13. Using an outdated mortality table to convert SLAs to JSAs causes a loss of actuarial equivalence because the Plan assumes that a participant will die sooner than contemporary life expectancy studies indicate, thus reducing the participant's monthly JSA annuity payment. *Id.* at 14.

What is more, Defendants have failed to update the Plan's mortality assumption ████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████ *See* Sutter Decl. Ex. 8. ████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████ Sutter Decl. Ex. 9; *see also* Sutter Decl. Ex. 10. ████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████ Sutter Decl. Ex. 10. ████████ ████████████████ Defendants cannot identify any investigation or analysis of the Plan's definition of actuarial equivalence or the actuarial assumptions used for SLA-to-JSA conversions. *See* Sutter Decl. Ex. 6, Wiseley Tr. 100:13-102:6, 104:16-105:8, 108:22-109:9; Sutter Decl. Ex. 2, Langford Tr. 79:10-21, 82:7-83:8, 124:7-126:10.

On top of an outdated mortality rate, the Plan's use of the PBGC immediate rate at the time of the participant's termination from employment also negatively impacts class members' JSA

benefits for two reasons. Sutter Decl. Ex. 1, Altman Report at 15. First, it unreasonably sets an interest rate at termination rather than benefit commencement, which may differ by many years. *Id.* Second, the PBGC immediate rate is far lower than market-based interest rates. *Id.* Defendants cannot identify the reason for using the interest rate in effect at the employee's termination. *See* Sutter Decl. Ex. 6, Wiseley Tr. 292:12-293:23.

Defendants have contended that their use of unreasonable actuarial assumptions for SLA-to-JSA conversions is somehow saved by the floor-offset feature of the Plan. *See, e.g.*, Sutter Decl. Ex. 2, Langford Tr. 137:20-140:2 (testifying that maintaining the 1983 GAM provides a "better outcome" for JSA recipients because of the offset's impact on the SLA). However, the floor-offset calculation is baked into the SLA and has no bearing on the conversion of the SLA to the JSA or on whether the SLA and the JSA are "actuarial[ly] equivalen[t]" and have the same present value. It is thus irrelevant to this case. Sutter Decl. Ex. 1, Altman Report at 21-22.

In any event, the Plan utilizes several different mortality and interest rate assumptions for *other* types of calculations. Sutter Decl. Ex. 6, Wiseley Tr. 298:6-14 (admitting that different rates may be applied to different contexts in the Plan). For example, the Plan's definition of "Actuarially Equivalent" utilizes § 417(e) assumptions to calculate early retirement benefits, lump sum distribution amounts to participants, and to calculate transfers from participants' Retirement Contribution Plan or 401(k) Savings Plan balances. Sutter Decl. Ex. 3, Plan Document §§ 2(a), 4(b), 4(e), 5(a)(v), 9(p); *see* Sutter Decl. Ex. 2, Langford Tr. 70:11-16. By contrast, for purposes of calculating JSA benefit payments, the Plan defines "Actuarially Equivalent" to mean the 1983 GAM and PBGC immediate rate. Sutter Decl. Ex. 3, Plan Document § 2(a); Sutter Decl. Ex. 6, Wiseley Tr. 298:6-14 (admitting that different rates may be applied to different contexts in the Plan); *see also* Sutter Decl. Ex. 2, Langford Tr. 70:17-25 (transfer of 401(k) balance to SLA benefit uses § 417(e) assumptions but conversion of SLA to JSA uses 1983 GAM). Nothing precludes Defendants from updating the Plan's actuarial assumptions for SLA-to-JSA conversion calculations while keeping the offset calculation the same. Sutter Decl. Ex. 2, Langford Tr. 139:16-

8

140:2 (admitting that the Plan could use § 417(e) assumptions for SLA-to-JSA conversions and the original assumptions for the offset calculation).

### D. Injury to the Proposed Class

To determine the amount of loss to class members, Plaintiff's actuarial expert calculated the JSA benefit that would be payable had reasonable actuarial assumptions been used to convert participants' SLAs to JSAs, and compared that to the amount actually being paid under the Plan. Sutter Decl. Ex. 1, Altman Report at 26. Based on this analysis, Plaintiff's expert concludes that 1,847 Plan participants (100% of the proposed class and nearly 99% of all JSA recipients) suffered reduced benefits, and the resulting loss to these participants' retirement is approximately $22,490,277. *See id.* at 24, 27.

## PLAINTIFF'S CLAIMS AND THE PROPOSED CLASS

All three of Plaintiff's claims center on whether Defendants satisfy ERISA's actuarial equivalence requirement when converting the participants' SLAs into JSAs. Count I alleges non-compliance by all Defendants with the actuarial equivalence requirements in 29 U.S.C. § 1055(d) and related regulatory provisions. Compl. ¶¶ 101-11, ECF 1. Count II alleges an illegal forfeiture under 29 U.S.C. § 1053(a) against all Defendants due to the failure to provide actuarially equivalent benefits. *Id.* ¶¶ 112-20. Count III finally alleges breaches of fiduciary duties under 29 U.S.C. § 1104(a) based on the same failure against Defendant Administrative Committee. *Id.* ¶¶ 121-32.

Plaintiff seeks the following relief: a declaratory judgment that the Plan's actuarial assumptions for calculating class members' JSAs violate ERISA's anti-forfeiture and actuarial equivalence requirements; a declaratory judgment that the Administrative Committee breached its fiduciary duties; reformation of the Plan (i) to provide that class members receive benefits calculated using updated actuarial assumptions, (ii) to bring the Plan into compliance with ERISA, and (iii) to pay all benefits owed to class members based on the reformed plan; an injunction that, *inter alia*, brings the Plan into compliance with ERISA and recalculates and pays all amounts owed

to class members as a result of these ERISA violations; an accounting of all prior benefit payments to the class under the Plan's outdated and unreasonable actuarial assumptions used to determine JSAs and sufficient information to recalculate those payments in compliance with ERISA; disgorgement of any profits received by Defendants; restitution of all amounts Defendants kept in the Plan but were obliged to pay to the class; surcharge from Defendants totaling the amounts owed to class members; and other appropriate relief, including declaratory and injunctive relief, available under ERISA. *See id.* § VIII.

Plaintiff Berkeley seeks to represent the following class:

All Plan participants and beneficiaries who are receiving a joint and survivor annuity (or, for beneficiaries whose spouses died before commencing benefits, a pre-retirement survivor annuity) which is less than the value of the single life annuity converted to a joint and survivor annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e) with an annual stability and August lookback period.

## LEGAL STANDARD

A party seeking class certification must show, by a preponderance of the evidence, that the proposed class meets the requirements of Rule 23(a) and at least one category of Rule 23(b). *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022). Although class certification may "entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## I.     The Class Meets All Requirements of Rule 23(a)

### A.     The Class Is Sufficiently Numerous

Rule 23(a)(1) requires a proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A]s a general rule, courts within the Ninth Circuit have

found that a class comprising at least forty members . . . typically satisfies the numerosity requirement." *Lamartina v. VMware, Inc.*, 2024 WL 3286059, at *2 (N.D. Cal. July 2, 2024) (Davila, J.). This requirement is easily satisfied here. The proposed class includes 1,847 individuals. Sutter Decl. Ex. 1, Altman Report at 24, 27.

Further, while not explicitly required under the Federal Rules, some courts also consider whether "an identifiable and ascertainable class exists." *Lao v. H&M Hennes & Mauritz, L.P.*, 2018 WL 3753708, at *4 (N.D. Cal. Aug. 8, 2018) (quoting *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011)). For a class to be ascertainable, membership "must be determinable from objective, rather than subjective, criteria." *Id.* Here, Plaintiff's expert ascertained the 1,847 members of the proposed class by applying objective criteria that compared the JSA benefit the proposed members receive under the Plan's illegal actuarial assumptions versus what they would receive using reasonable actuarial assumptions included in § 417(e). Sutter Decl. Ex. 1, Altman Report at 24, 27. Therefore, Plaintiff's proposed class is both sufficiently numerous and ascertainable.

### B.      The Class Satisfies the Commonality Requirement

To satisfy commonality under Rule 23(a)(2), the class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Even a "single *significant* question of law or fact" is sufficient. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)). This requirement is construed "permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *see also Ballas v. Anthem Blue Cross Life & Health Ins. Co.*, 2013 WL 12119569, at *7 (C.D. Cal. Apr. 29, 2013) (commonality is "construed liberally"). For example, commonality may be satisfied where there is a common question as to "whether a defendant's course of conduct is in its broad outlines actionable." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

---

11

Here, all three of Plaintiff's ERISA claims relate to the same fundamental issue: whether the actuarial assumptions Intel used to convert class members' SLAs into JSAs fails to provide actuarial equivalence between those two forms of benefit. This issue arises from Defendants' uniform practice of converting participants' SLAs into JSAs using the inaccurate 1983 GAM and PBGC immediate interest rate as specified by the Plan. The parties contest several other related common questions that will be answered by the Court for all potential class members, such as: whether the Plan's actuarial assumptions for SLA-to-JSA conversions comply with ERISA; whether ERISA requires actuarial assumptions for SLA-to-JSA conversions to be "reasonable"; and whether Plaintiff's claims necessarily require adjustments to the calculation of the offset in the Plan's formula. *See Urlaub*, 2024 WL 2209538, at *3-4 (finding commonality when plaintiffs' expert testified that the plans' assumptions did not result in reasonable SLA-to-JSA conversions whereas the defense expert testified to the contrary); *Kernan v. Metro. Life Ins. Co.*, 2023 WL 3620884, at *7 (S.D.N.Y. Mar. 17, 2023) (holding that identifying the proper calculation for JSA payments would resolve common factual and legal questions), *report & recommendation adopted sub nom. McAlister*, 2023 WL 5769491; *see also Klawonn v. Bd. of Dirs. for Motion Picture Indus. Pension Plans*, 2024 WL 653398, at *6 (C.D. Cal. Jan. 18, 2024) (finding commonality in ERISA case where the "essential question" focused on the defendants' conduct and its effect on the plan). What is more, determining the amount of loss suffered by Plaintiff and the proposed class members as a result of Defendants' common practice will entail additional common questions, such as whether the assumptions specified in § 417(e) provide the appropriate basis for calculating actuarially equivalent JSA benefits.

The fact that the Plan includes multiple ways for a participant to obtain an SLA benefit does not alter the existence of these common questions. There is a single Intel Minimum Pension Plan–the Plan–and Defendants' calculation of all JSAs violates ERISA's actuarial equivalence requirement in an identical fashion by using the same outdated and inaccurate reduction factors to convert SLAs to JSAs. *Allen v. Similasan Corp.*, 2017 WL 1346404, at *3 (S.D. Cal. Apr. 12,

2017) (certifying class across multiple products despite differences in labeling because labels all related to same general topic of product efficacy). *Barnes v. AT&T Pension Benefit Plan-NonBargained Program*, 273 F.R.D. 562, 568 (N.D. Cal. 2011) (finding that different factual predicates between pension plan participants did not defeat commonality); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 818-22, 826 (7th Cir. 2012) (reversing district court's failure to certify class because commonality existed despite different figures applicable to class members since common methodology applied by expert provided answer for each class member).

The core question of whether the Plan provides JSAs that are actuarially equivalent to SLAs as required by ERISA is a classic common question, and therefore, Rule 23(a)(2) is satisfied.

## C.    The Class Representative's Claims Are Typical of Those of the Class

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). "Like commonality, typicality is a 'permissive' standard and 'the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff.'" *Kanawi*, 254 F.R.D. at 110 (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *DZ Reserve v. Meta Platforms, Inc.*, 2022 WL 912890, at *3 (N.D. Cal. Mar. 29, 2022) (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)), *aff'd in relevant part*, 96 F.4th 1223 (9th Cir. 2024).

The named plaintiff's claims need only be "reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citations omitted). Thus, typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citations omitted).

13

Here, Plaintiff Berkeley's claims are typical of the class members he seeks to represent. *First*, Plaintiff Berkeley's and the proposed class's claims "arise[] from the same course of events" because each is receiving a JSA that Intel converted from an SLA using the same outdated, unreasonable actuarial assumptions. *Id. Second*, Plaintiff Berkeley and each class member make the same "legal arguments to prove the defendant[s'] liability." *Id.* Each alleges that the benefits they are receiving are less than the benefits they are entitled to under ERISA's actuarial equivalence requirement (Count One), that Defendants illegally caused them to forfeit benefits (Count Two), and that Defendants' conduct was a breach of their fiduciary duties (Count Three). *See* ECF 1. Therefore, the Class Representative's and the proposed class's claims meet the typicality requirement.

### D.    The Class Representative and Counsel Will Adequately Represent the Class's Interests

The adequacy requirement looks to whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing adequacy, district courts ask: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted); *DZ Reserve*, 2022 WL 912890, at *4-5.

#### 1.    No Conflicts of Interest Are Present

No conflicts of interest exist between Plaintiff Berkeley and the other proposed class members because they all receive lower pension payments than they would otherwise receive had Defendants converted those participants' SLAs into JSAs using the reasonable actuarial assumptions under § 417(e). The legal theory and relief Plaintiff Berkeley advances ensures that all potential class members' pension payments would be increased as necessary to bring the value of their JSAs into equivalence with the SLAs provided under the Plan. In other words, all proposed class members have suffered the same injury, and all will benefit from Plaintiff's sought relief.

Both *Urlaub* and *Kernan* are particularly instructive here, as both courts held plaintiffs were adequate on nearly identical facts challenging the same practice of using unreasonable actuarial assumptions to convert SLAs to JSAs. *See Urlaub*, 2024 WL 2209538, at *5 (finding no conflicts because the class members "share 'the same interest' and the 'same injury'" (citation omitted)); *Kernan*, 2023 WL 3620884, at *7-8 (finding Rule 23(a) factors met because under the plaintiffs' methodology, the named plaintiffs showed that the JSAs available were not actuarially equivalent to the SLAs). Notably, both courts held that plaintiffs were adequate representatives because their expert—Ian Altman, who is also Plaintiff's expert here—had provided an actuarial methodology that, if applied, "would result in an increase in benefits for all the class members." *McAlister*, 2023 WL 5769491, at *6; *see also Urlaub*, 2024 WL 2209538, at *5 (acknowledging the case theory and loss methodology gives all class members a "shared interest in establishing that the defendants underpaid them in violation of ERISA"). As in both of these cases, Plaintiff Berkeley's theory will result in increased pension payments to *all* class members if accepted. Sutter Decl. Ex. 1, Altman Report at 25-27. He is therefore an adequate representative.

Defendants may attempt to manufacture "conflicts" under several theories, none of which erodes adequacy. *First*, Defendants may argue that some class members are "better off" when their SLAs are calculated under the Plan's existing actuarial assumptions rather than under § 417(e) assumptions, or that Plaintiff Berkeley cannot adequately represent a participant whose SLA was not calculated using the floor-offset or QSERP formulas. These arguments are a red-herring. Plaintiff does not seek to change the way Intel calculates the SLA, and how class members' underlying SLAs were calculated has no bearing on liability or relief in this case. ERISA requires that a JSA be actuarially equivalent to the SLA and does not dictate how the SLA is calculated. *See* 29 U.S.C. § 1055(d) (requiring that a qualified JSA be "the actuarial equivalent of a single annuity for the life of the participant"); 29 U.S.C. § 1053(a) (protecting the "normal retirement benefit" from forfeiture); *see also supra* pp. 12-13; Sutter Decl. Ex. 2, Langford Tr. 139:16-140:2. All potential class members' "normal retirement benefit"—the SLA, no matter how it was

calculated—is converted to a JSA using the same outdated and unreasonable actuarial assumptions. As described above, these provisions, and the relief Plaintiff Berkeley seeks, protect this SLA-to-JSA conversion and, if Plaintiff is successful, would result in *all* potential class members receiving *increased* monthly pension payments. This presents an alignment of interest between Plaintiff Berkeley and the proposed class to remedy the Plan's improper SLA-to-JSA conversion and secure the corresponding increase in monthly pension payments—regardless of how class members' SLAs were calculated. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 310 (N.D. Cal. 2018) (holding class representatives were adequate because they were seeking to "provide substantial benefits to all of the Settlement Class Members").

*Second*, Defendants may argue that a conflict exists because other potential class members might prefer to have their JSAs calculated using a different combination of mortality tables and interest rates than specified in Plaintiff's class definition. This speculative argument is without merit. The § 417(e) mortality and interest rate combination used in the class definition was one that Defendants themselves adopted to perform other actuarial calculations under the Plan and would be beneficial to *all* potential class members. *See* Sutter Decl. Ex. 1, Altman Report at 16, 22; *see also supra* pp. 8-9. Indeed, the *Urlaub* court rejected this very same argument in granting certification, reasoning that the plaintiffs already provided a logical reason for using the same stability and lookback periods as the plan. 2024 WL 2209538, at *5. In any event, any potential divergence of interests on this point is a remedies issue suitable for a later stage, not a bar to class certification. Newberg on Class Actions § 3:62 (5th ed.); *see also Blackie*, 524 F.2d at 909 (explaining "courts have generally declined to consider conflicts, particularly as they regard [the method of calculating] damages, sufficient to defeat class action status"); *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 768 (8th Cir. 2020) (in case challenging use of different mortality tables, explaining "even if there are slightly divergent theories that maximize damages for certain members of the class, 'this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability'" (citations omitted)); *Bally v. State Farm Life Ins. Co.*, 335

F.R.D. 288, 303 (N.D. Cal. 2020) (finding no intra-class conflict where actuarial model might benefit some class members more than others depending on mortality rates used)).

### 2.    *Plaintiff Berkeley and Counsel Have Vigorously Prosecuted the Case*

Plaintiff Berkeley has actively participated in the litigation to protect class members' interests. Plaintiff Berkeley reviewed the complaint, has remained in continuous communication with counsel, knows the theory of the case and understands his role as class representative, produced documents in response to Defendants' document requests, and sat for a 5 1/2-hour deposition. Berkeley Decl. ¶¶ 5-8. This involvement and understanding of the case are more than sufficient to serve as class representative. *See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *6-7 (C.D. Cal. June 15, 2017) (citing *In re Northrop Grumman Corp., ERISA Litig.*, 2011 WL 3505264, at *14-15 (C.D. Cal. Mar. 29, 2011)); *Californians for Disability Rts., Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) ("The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim, and will be deemed inadequate only if she is 'startingly unfamiliar' with the case." (citation omitted)).

Plaintiff's counsel easily satisfy the requirements for appointing class counsel under Rule 23(g). Plaintiff's counsel—attorneys from the law firm of Cohen Milstein Sellers & Toll PLLC and Shaun Martin of the University of San Diego Law School—have extensive experience handling class actions around the country and have a deep knowledge of ERISA, including with litigating other similar actuarial equivalence cases. Declaration of Michelle C. Yau ("Yau Decl.") ¶¶ 3-19; Declaration of Shaun Martin ("Martin Decl.") ¶ 2. Plaintiff's counsel have vigorously prosecuted this action on behalf of the proposed class thus far and will continue to do so. Yau Decl. ¶¶ 20-23; Martin Decl. ¶¶ 6-7. For all of these reasons, adequacy under Rule 23(a)(4) is met.

## II.    Class Certification Is Appropriate Under All Subsections of Rule 23(b)

In addition to meeting the requirements of Rule 23(a), Plaintiff must also "show that the action is maintainable under" at least one Rule 23(b) subsection. *Amchem Prods. Inc. v. Windsor*,

521 U.S. 591, 614 (1997). If the requirements of more than one provision are satisfied, the court may certify under each subsection that is satisfied. 2 Newberg and Rubenstein on Class Actions § 4:1 (6th ed.).[2]

### A.     Class Certification Is Appropriate Under Rule 23(b)(1)

Rule 23(b)(1)(A) provides for class treatment where "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(1)(B) provides for the same where "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." *Id.* 23(b)(1)(B). "Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members." *Kanawi*, 254 F.R.D. at 111.

"Most ERISA class action cases are certified under Rule 23(b)(1)." *Kanawi*, 254 F.R.D. at 111. Indeed, "ERISA fiduciary litigation presents a paradigmatic example of a (b)(1) class." *Id.* at 112 (cleaned up). Indeed, "[t]he language of subdivision (b)(1)(A), addressing the risk of 'inconsistent adjudications,' speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'" *McAlister*, 2023 WL 5769491, at *8 (quoting *In re Citigroup Pension ERISA Plan Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006)).

---

[2] While certification is appropriate here under all three subsections, Plaintiff proposes that certification is most appropriate under Rule 23(b)(1) or (b)(2), given that Rule 23(b)(3) is "[f]ramed for situations in which 'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations." *Amchem Prods. Inc.*, 521 U.S. at 615 (quoting Rule 23 advisory committee notes).

18

Plaintiff's claims are "a good fit" under Rule 23(b)(1). *See Urlaub*, 2024 WL 2209538, at *6. Whether Defendants' actuarial assumptions underlying the SLA-to-JSA conversion produce actuarially equivalent benefits under ERISA are issues that apply to the class as a whole. If Plaintiff and the other almost 2,000 class members prosecuted separate actions on this issue, inconsistent or varying adjudications in each action could result in conflicting determinations as to how to calculate JSA benefits. Therefore, Plaintiffs' claims are suitable for certification under Rule 23(b)(1)(A). *See McAlister*, 2023 WL 5769491, at *8 (certifying actuarial equivalence class under Rule 23(b)(1)(A)); *Urlaub*, 2024 WL 2209538, at *6 (reasoning that defendants were "entitled to consistent rulings regarding" the plan's method of calculating JSA benefits and reformation of that method (citation omitted)); *see also Munro v. Univ. of S. Cal.*, 2019 WL 7842551, at *10 (C.D. Cal. Dec. 20, 2019) ("the prudent and coherent administration of the [plan] is too important to permit tens or hundreds of separate adjudications to impose varying standards on Defendants."); *Norris v. Mazzola*, 2017 WL 6493091, at *5 (N.D. Cal. Dec. 19, 2017) (outlining numerous different and conflicting orders ERISA plan administrator might receive if multiple suits were permitted).

Similarly, Plaintiff's claims are suitable for Rule 23(b)(1)(B) treatment. Rule 23(b)(1)(B) allows certification where "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). "Classic examples" of Rule 23(b)(1)(B) cases include "actions charging a breach of trust . . . similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." *Id.* at 833-34. Here, the issues central to Plaintiff's claims—whether the Plan's actuarial assumptions for SLA-to-JSA conversions applicable to the class violate ERISA and whether the Administrative Committee breached its fiduciary duties—will necessarily implicate the rights of other class members. What is more, Plaintiff seeks a declaration that the Plan's actuarial assumptions violate ERISA, an injunction prohibiting Defendants from using

19

outdated actuarial assumptions, and reformation of the Plan to bring it into compliance and to recalculate JSAs under the reformed Plan. Thus, any adjudication by one class member will necessarily impact all class members due to the nature of the relief Plaintiff seeks. *See Urlaub*, 2024 WL 2209538, at *6-7 (certifying Rule 23(b)(1) class and reasoning that reformation of the plans' method of calculating JSA benefits to comply with ERISA met Rule 23(b)(1) requirement); *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 496 (N.D. Cal. 2010) (certifying class under Rules 23(a)(1)(A) and (B) where the plaintiff primarily sought injunctive relief in the form of a declaration that benefits must be recalculated), *order modified by* 273 F.R.D. 562 (N.D. Cal. 2011); *McCluskey v. Trs. of Red Dot Corp. Employee Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 677-78 (W.D. Wash. 2010) (certifying ERISA action under Rule 23(b)(1)(B) where the plaintiffs' primary relief sought was a declaration from the court on the proper interpretation of the plan regarding lump sum benefit payments).

### B. Class Certification Is Appropriate Under Rule 23(b)(2)

Rule 23(b)(2) independently allows a class action to be maintained where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ P. 23(b)(2). In the Ninth Circuit, "'it is sufficient' to meet the requirements of Rule 23(b)(2) that 'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" *Rodriguez*, 591 F.3d at 1125 (citations omitted).

Plaintiff challenges exactly that: Defendants' common practice of using outdated and inaccurate actuarial assumptions to calculate JSA benefits. *See Kernan*, 2023 WL 3620884, at *8 (finding Rule 23(b)(2) certification appropriate). Further, to remedy this unlawful practice, Plaintiff seeks declaratory and injunctive relief that necessarily applies to the class as a whole. Specifically, Plaintiff seeks, *inter alia*, an order (1) declaring Defendants' reliance on the existing actuarial assumptions as unlawful under ERISA, (2) prohibiting Defendants from using those actuarial assumptions to calculate JSA benefits for class members in the future, and (3) reforming

the Plan and recalculating JSA benefits to ensure that JSA benefits are at least actuarially equivalent to the SLA benefits that participants would receive as a default if they were single, such as with the actuarial assumptions outlined in § 417(e).

In addition, Plaintiff seeks recalculation and repayment of past pension benefits due under the reformed Plan. Courts have recognized such relief under ERISA as being injunctive, rather than monetary, in nature and thus suitable for certification under Rule 23(b)(2). *See Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 588 (W.D. Wash. 2008) (certifying (b)(2) class where plaintiffs sought "equitable relief in the form of an injunction prohibiting enforcement of the Plan's unlawful provisions" and "recalculation of the accrued benefits of class members based upon the old, pre cash balance formula for calculating benefits"); *Richards v. FleetBoston Fin. Corp.*, 235 F.R.D. 165, 174 (D. Conn. 2006) ("For purposes of subsection (b)(2), an injunction requiring the payment of monies unlawfully withheld in the past may be considered injunctive relief.").

Alternatively, even if the Court determined that recalculation and repayment of past pension benefits due is "monetary" rather than injunctive, (b)(2) certification is still appropriate because it is not the primary relief that Plaintiff seeks. This request "is merely incidental to their primary claim for injunctive relief to prohibit the use of [outdated] mortality tables" in calculating pension benefits. *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986); *see also Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003) (affirming (b)(2) certification and explaining primary relief sought was "declaratory" because plaintiffs sought "a declaration that [Defendant's] method of computing the [ERISA benefits] to which withdrawing employees are entitled is unlawful," even though the "declaration sought" was "a prelude to a request for damages"); *In re Citigroup Pension Plan*, 241 F.R.D. at 181 (certifying (b)(2) class seeking "reformation of the Plan to comply with ERISA[]" and repayment of "monies prescribed by the recalculation of benefits under a statutorily compliant formula," noting that damages requested were secondary because plan participants would still bring suit to enjoin illegal activity even if "precluded from monetary recovery"). Any monetary relief will "flow directly"

from the "injunctive or declaratory relief." *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Prac. Litig.*, 2011 WL 6372412, at \*7 (N.D. Cal. Dec. 20, 2011) (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)). Thus, certification under Rule 23(b)(2) is appropriate.

### C.    Class Certification Is Appropriate Under Rule 23(b)(3)

Rule 23(b)(3) provides for certification where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The class meets requirements.

#### 1.    Common Questions Predominate

Rule 23(b)(3) permits certification when "one or more of the central issues in the action are common to the class and can be said to predominate . . . even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). The predominance inquiry focuses on whether common questions present a "significant aspect of the case" that "can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (citation omitted). Thus, the "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *DZ Reserve*, 2022 WL 912890, at \*5 (quoting *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016)).

Here, Defendants' common course of conduct using outdated and unreasonable actuarial assumptions has injured potential class members, who are receiving less than actuarially equivalent JSA benefits. This injury can be established by using the same evidence for all class members by comparing Defendants' actuarial assumptions under the Plan to reasonable assumptions under § 417(e). Plaintiff's expert will use the same model to calculate the amount of benefits that each class member should have received. These common issues go to the heart of both liability and

damages and predominate over any purported individualized issues. *See DZ Reserve*, 2022 WL 912890, at *6 (finding predominance where "the main liability question is the same for all class members").

### 2. Class Adjudication Is the Superior Method for Resolving This Action

Rule 23(b)(3) specifies several factors for considering whether a proposed class is superior to individual litigation:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The proposed class meets all of these factors.

*First*, class members have no interest in individually controlling the litigation because the common issues predominate and individualized litigation would be cost-prohibitive. *See Bumpus v. Realogy Brokerage Grp., LLC*, 2022 WL 867256, at *9 (N.D. Cal. Mar. 23, 2022) (finding superiority where "[t]he recovery for each violation is relatively small, and it is not likely for class members to recover large amounts individually if they prevailed"). *Second*, no other pending litigation concerning this matter exists. *Third*, concentrating the claims in this District is desirable because the proceedings here are advanced and Defendant Intel resides and does business in this District. ECF 22 ¶ 20. *Fourth*, no manageability concerns exist that would weigh against certification, especially in light of this case being tried to the Court and not a jury. Thus, the superiority criteria weigh in favor of certification.

### CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Class Certification.

Dated: January 24, 2025

By: */s/ Michelle C. Yau*

Michelle C. Yau (*pro hac vice*)
Daniel R. Sutter (*pro hac vice*)
Caroline E. Bressman (*pro hac vice*)
Allison C. Pienta (*pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Eighth Floor
Washington, DC 20005
(202) 408-4600
myau@cohenmilstein.com
dsutter@cohenmilstein.com
cbressman@cohenmilstein.com
apienta@cohenmilstein.com

Shaun P. Martin (Cal. Bar No. 158480)
5998 Alcala Park, Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Facsimile: (619) 260-7933
smartin@sandiego.edu

*Attorneys for Plaintiff and Proposed Class*