United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GREGG BERKELEY,
Plaintiff,
v.
INTEL CORPORATION, et al.,
Defendants.

Case No. 5:23-cv-00343-EJD

**ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT**

Re: Dkt. No. 119

Before the Court is Plaintiff Greff Berkeley's ("Plaintiff") motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). Mot., ECF No. 119; Opp'n, ECF No. 121; Reply, ECF No. 122. After careful review of the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons explained below, the Court **DENIES** Plaintiff's motion.

## I. BACKGROUND

On April 28, 2026, the Court issued an order granting Defendants Intel Corporation ("Intel") and the Administrative Committee of the Intel Minimum Pension Plan's ("Administrative Committee") (collectively, "Defendants") motion for summary judgment. Order Granting Mot. for Summary J. ("Prior Order"), ECF No. 114. The Court thereafter entered Judgment on April 9, 2026. Judgment, ECF No. 115. Plaintiff now seeks to alter or amend this Judgment pursuant to Rule 59(e).

The Court incorporates all statements of fact and findings from its Prior Order and will reiterate only those relevant to the present motion. *See* Prior Order. Plaintiff brought claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging that Defendants' use

United States District Court
Northern District of California

of unreasonable actuarial assumptions in Single Life Annuity ("SLA") to Joint Survivor Annuity ("JSA") conversions violated: (1) the joint and survivor annuity requirements in 29 U.S.C. § 1055; (2) the anti-forfeiture rules of 29 U.S.C. § 1053; and (3) the Administrative Committee's fiduciary duty to the class. *Id.* at 4. The Court granted Defendants' motion for summary judgment on all claims. *See id.*

Regarding the first claim under § 1055, Plaintiff alleged that Defendants' use of the GAM-83 mortality table and PBGC interest rates was "unreasonable" and therefore failed to achieve "actuarial equivalence" when converting the SLAs to JSAs. *Id.* at 4–6. The Court ultimately found Plaintiff's claim failed because there was insufficient evidence that "actuarial equivalence" required the use of "reasonable" actuarial assumptions. The Court held that "[t]he evidence does not show that a 'reasonableness' requirement may be inferred from the ordinary meaning of 'actuarial equivalent,' from congressional intent, or from Department of Treasury regulations." *Id.* at 16. The present motion does not challenge this finding.

Regarding the second claim under § 1053, Plaintiff alleged that he also suffered a forfeiture when Defendants failed to calculate actuarially equivalent benefits using "reasonable" actuarial factors. *Id.* The Court observed that § 1053 forfeiture claims are not always derivative of § 1055 actuarial equivalence claims, but found that under these facts, Plaintiff relied on the same theory for both claims—"that Defendants unlawfully decreased the value of his benefits under § 1053 because the MPP applied unreasonable actuarial assumptions in violation of § 1055." *Id.* at 16–17. Absent an alternative theory, for the same reasons detailed in its examination of Plaintiff's § 1055 claim, the Court granted judgment on this claim as well. This is the finding Plaintiff challenges now.

## II. LEGAL STANDARD

Rule 59(e) permits a court to reconsider and amend its judgment within 28 days after entry of the judgment. Fed. R. Civ. P. 59(e). Amending a judgment after its entry is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotations and

citation omitted). "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999). Generally, the four basic grounds for granting a Rule 59(e) motion are "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing McDowell, 197 F.3d at 1255 n.1).

## III. DISCUSSION

Plaintiff argues the Court committed "clear error" when it found that his § 1053 claim relied upon the same actuarial equivalence theory as his § 1055 claim. Plaintiff's § 1055 claim relied upon the use of "reasonable" actuarial factors to achieve "actuarial equivalence," but Plaintiff contends his § 1053 claim differed by relying instead on an examination of his "normal retirement benefit." *See* Mot. (citing 29 U.S.C. § 1053(a) ("Each pension plan shall provide that an employee's right to his *normal retirement benefit* is nonforfeitable upon the attainment of normal retirement age.") (emphasis added)).

This is not a new issue. Plaintiff made a similar argument in his original opposition to summary judgment, contending that "[t]he protections imposed by the forfeiture provision do not turn on a statutory interpretation of 'actuarial equivalence.'" Opp'n to Mot. for Summary J. 18, ECF No. 99. The Court acknowledged and rejected this argument, finding the complaint alleged otherwise. Prior Order 16. And here, the Court similarly rejects Plaintiff's argument that this finding was a "clear error" for several reasons.

First, the complaint repeatedly alleges that Defendants violated § 1053 by failing to provide "actuarially equivalent" benefits. For example, Plaintiff explicitly alleges:

> 44. [D]istribution of retirement benefits that are less than their **actuarial equivalent value** constitutes an impermissible forfeiture under ERISA § 203(a), 29 U.S.C. § 1053(a).
> [ . . . . ]
> 114. Thus, paying participants less than the **actuarial equivalent** of



United States District Court
Northern District of California

United States District Court
Northern District of California

> their accrued vested benefit results in an illegal forfeiture of their vested benefits. ERISA § 203(a), 29 U.S.C. § 1053(a).
>
> 115. As explained above, Class members received less than the **actuarial equivalent** of their benefits (expressed as single life annuities) **because** the Plan's actuarial assumptions for calculating Class members' joint and survivor annuities provided them with less than the **actuarial equivalent** of their ERISA-protected benefits.

Compl. ¶¶ 44, 114, 115.

Second, the complaint similarly acknowledges that Plaintiff relies on the same theory for both claims. For example, the introduction section of Plaintiff's complaint reads:

> 8. First, ERISA requires that joint and survivor annuities be "the actuarial equivalent of a single annuity for the life of the participant." ERISA §§ 205(d)(1)(B), (d)(2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B), (d)(2)(A)(ii).
>
> 9. Second, ERISA § 203(a), 29 U.S.C. § 1053(a) provides that an employee's right to their vested retirement benefits is non-forfeitable and states that paying a participant less than the **actuarial equivalent value** of their accrued benefit results in an illegal forfeiture of vested benefits.
>
> 10. Echoing the statute's **actuarial equivalence** requirements, applicable Treasury regulations make clear that actuarial "[e]quivalence may be determined[] on the basis of consistently applied reasonable actuarial factors[.]" 26 CFR § 1.401(a)-11(b)(2).[1]
>
> 11. The Intel Plan violates both these rules with respect to the default form of pension provided to married participants. For these individuals, when the Plan converts a single life annuity to a joint and survivor annuity, it uses a mortality table that is 40 years out of date, despite massive increases in life expectancy in the intervening decades.
>
> 12. As a result, these participants and beneficiaries receive significantly less than the **actuarial equivalent** of their single life annuity, in violation of ERISA's requirements set forth in § 203(a) [(§ 1053)] and § 205(d) [(§ 1055)].

Compl. ¶¶ 8–12; *see also id.* ¶ 115 (alleging Defendants violated § 1053 claim for the reasons "explained above," in the § 1055 section).

Third, though Plaintiff quotes § 1053's "normal retirement benefit" language in his

---

[1] Plaintiff also now argues that the Court should not have considered 26 CFR § 1.401(a)-11(b)(2) in its analysis of § 1053 whatsoever, contending the only relevant regulation to that claim is 26 C.F.R. § 1.411(a)-4(a). But as is reflected in this quotation, Plaintiff's reliance on § 1.401(a)-11(b)(2) in the complaint for both claims is clear.

complaint, he does not invoke it. *See id.* ¶ 41–44. There is one instance in the complaint where Plaintiff cites the definition of "normal retirement benefit" under § 1053's non-forfeitability requirement; but immediately following this citation, Plaintiff goes on to allege that he suffered forfeiture because Defendants made "adjustments ***in excess of reasonable actuarial reductions***":

> 42. ERISA § 3(22); 29 U.S.C. § 1002(22) defines "normal retirement benefit" as "the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age."
>
> 43. The Treasury regulation which "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements," 26 C.F.R. § 1.411(a)-4(a), states that "adjustments ***in excess of reasonable actuarial reductions***, can result in rights being forfeitable."
>
> 44. Thus, distribution of retirement benefits that are less than their actuarial equivalent value constitutes an impermissible forfeiture under ERISA § 203(a), 29 U.S.C. § 1053(a).

*Id.* ¶¶ 42–44 (emphasis in original). Plaintiff also briefly cited to the "normal retirement benefit" language from § 1053 in his summary judgment opposition, before immediately returning to his theory that Defendants unlawfully adjusted his "normal retirement benefit" using "unreasonable" actuarial factors:

> When calculating Plaintiff's JSA, Defendants made an actuarial adjustment to his normal retirement benefits. *E.g.*, Compl. ¶¶ 49, 53–66. The actuarial adjustment was **unreasonable** and caused his JSA to be less valuable than his normal retirement benefits. *Id.* ¶¶ 53-66. The determination of whether the actuarial adjustment Intel imposes on JSA recipients' normal retirement benefit is '**unreasonable**' is a fact intensive inquiry that cannot be resolved on a Rule 12 motion. ***Smith*, 438 F. Supp. 3d at 924**.

Opp'n 18. And the Court notes that *Smith*, which Plaintiff cited to define "unreasonable" for purposes of § 1053, examined only "reasonableness" in the context of § 1055. *Smith v. Rockwell Automation, Inc.*, 438 F. Supp. 3d 912, 924 (E.D. Wis. 2020).

Finally, the Court observes that Plaintiff's present motion reflects a pattern. The Court recalls when Plaintiff similarly argued during the summary judgment hearing that he never alleged § 1055 required the use of "reasonable" actuarial factors, despite the complaint plainly stating otherwise. The Court found:

> Before the Court begins, it briefly addresses a new argument Plaintiff

> raised for the first time during the February 5, 2026, hearing—that Plaintiff never claimed actuarial assumptions must be "reasonable" under § 1055, only that they create "equivalent" benefits. The Court need go no further than Plaintiff's own complaint to find this representation is not true. Plaintiff's core allegation is that he "suffered harm from Defendants' use of the Plan's outdated and unreasonable actuarial assumptions," and his monthly pension payments would have been larger if his benefits were "determined using reasonable actuarial assumptions."
>
> Central to Plaintiff's claim is the assumption that "reasonableness" and "equivalence" are not distinct—in Plaintiff's own words, "[i]n order for the economic value of benefits to be equivalent, the assumptions used to perform an actuarial equivalence computation must be *reasonable*." Indeed, Plaintiff previously represented that one question common to all class members is 'whether ERISA requires actuarial assumptions for SLA-to-JSA conversions to be "reasonable," which the Court relied on in finding commonality satisfied. And consistent with this position, Plaintiff's opposition to the present motion begins with the argument that actuarial equivalence "demand[s] the use of reasonable assumptions." The Court is perplexed as to how Plaintiff now represents that "reasonableness is [Defendants'] argument, not ours."

Prior Order 4–5 (internal citations omitted). Similarly here, Plaintiff's attempts to distance himself from his own allegations are unavailing.

For these reasons, the Court finds it did not commit a "clear error" when it found that Plaintiff relied on the same theory of liability for both claims. Plaintiff repeatedly made his position clear—that Defendants violated both § 1053 and § 1055 by using unreasonable actuarial factors. This is the theory Plaintiff alleged, the theory Plaintiff argued, the theory that Defendants relied upon in their motion for summary judgment, and the theory the Court examined in the Prior Order. Because the Court found "actuarial equivalence" does not require the use of "reasonable" actuarial factors, the Court's finding that both claims necessarily fail remains.

## IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's motion.

**IT IS SO ORDERED.**

Dated: November 3, 2026

EDWARD J. DAVILA
United States District Judge